## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD BASEMORE, JOHN BURLISON and DAVID GORRIS, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br>    v.<br><br>KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC,<br><br>               Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Donald Basemore, John Burlison and David Gorris, individually and on behalf of all others similarly situated, through undersigned counsel, allege as follows.

### I.  NATURE OF THE ACTION

1.      Defendants Koninklijke Philips N.V., Philips North America LLC, and Philips RS North America LLC (collectively "Philips") manufacture and sell a variety of products that are intended to help people breathe. These include Continuous Positive Airway Pressure ("CPAP") and Bilevel Positive Airway Pressure ("BiPAP") machines, that are commonly used to treat sleep apnea, and ventilators that treat respiratory failure. In general, each of these devices express air into patients' airways. CPAP and BiPAP machines are intended for daily use, and ventilators are used continuously while needed. Without these devices, some patients may experience severe symptoms, including heart attack, stroke, and death by asphyxiation.

2.      On June 14, 2021, Philips announced a recall of many of its CPAP/BiPAP machines and its ventilators (the "Recalled Breathing Machines").[1] Specifically, the Recalled Breathing Machines contain polyester-based polyurethane ("PE-PUR") foam for sound abatement. Philips announced that this foam may break down and be inhaled or ingested. Further, the PE-PUR foam may emit volatile organic compounds ("VOCs") that may be inhaled, ingested, adversely affect organs, and are carcinogenic. Philips announced these hazards could result in "serious injury which can be life-threatening or cause permanent impairment." This is sometimes herein identified as "the Foam Defect."

3.      Philips knew about these very substantial and material risks long before the recall. Patients who use the Recalled Breathing Machines have complained about black particles in their machines for several years. Philips, however, did not warn the public or its customers about these hazards until late April 2021 and did not recall the Recalled Breathing Machines until June 14, 2021.

4.      Patients use the Recalled Breathing Machines every day but, absent this litigation, Philips had no plan to replace any of the affected devices, now or in the future. Philips has no concrete timeline for replacing or repairing any of the Recalled Breathing Machines.

5.      In fact, Philips timed its recall of the Recalled Breathing Machines to coincide with the launch of its next generation of products, which purportedly do not suffer from the same PE-PUR foam issues. Thus, the only safe and immediate option that Philips offers to its customers—many of whom need and rely on the Recalled Breathing Machines—is to purchase Philips's newer model, thus profiting Philips further.

---

[1] These include the following models: E30; DreamStation ASV; DreamStation ST, AVAPS; SystemOne ASV4; C Series ASV, S/T, AVAPs; OmniLab Advanced Plus; SystemOne (Q Series); DreamStation CPAP, Auto CPAP, BiPAP; DreamStation Go CPAP, APAP; Dorma 400, 500 CPAP; REMStar SE Auto CPAP; Trilogy 100 and 200; Garbin Plus, Aeris, LifeVent; A-Series BiPAP Hybrid A30; A-Series BiPAP V30 Auto; A-Series BiPAP A40; and A-Series BiPAP A30.

6.      Plaintiffs bring this Class Action Complaint to represent classes of similarly situated persons defined below, who also purchased the defective Recalled Breathing Machines, and to obtain relief for their injuries.

## I.      PARTIES

## A.      PLAINTIFFS

7.      Plaintiff Donald Basemore is a retired veteran who resides in an assisted living facility in St Louis, Missouri. He was diagnosed with sleep apnea and obtained a Dreamstation CPAP machine through the Veterans Administration in 2016. He would not have accepted this product if he had known it was defective, contained a carcinogenic byproduct, and would be subject to a recall for containing defective materials. Despite the recall, Mr. Basemore has continued using his Dreamstation, because he had to make an appointment with his doctor at the Veterans Administration to obtain advice on whether to continue using the machine and to see if the VA will replace the machine, he does not believe it is safe for him as someone still recovering from a massive stroke to discontinue CPAP use, and he does not have a replacement machine readily available. Mr. Basemore is fearful of the damage he may have already suffered to his physical wellbeing and will suffer from his continued use of the defective Dreamstation. Mr. Basemore has registered with Phillips for the recall.

8.      Plaintiff John Burlison is a retired college dean who is 61 years of age now working as a real estate broker who resides in Henderson, Nevada. He was diagnosed with obstructive sleep apnea in late 2019 and purchased a Dreamstation in early 2020. He would not have purchased this product if he had known it was defective, contained a carcinogenic byproduct, and would be subject to a recall for containing defective materials. Upon learning of the recall, and after consulting with his physician who wrote him a prescription for a new machine, Mr. Burlison stopped using the Dreamstation and purchased a replacement CPAP machine for $1,400.00. His medical insurance company would not pay for any part of the replacement machine because it will only pay to replace

- 5 -

a CPAP every three years regardless of the reason. Mr. Burlison is fearful of the damage he may have already suffered to his physical wellbeing from his use of the defective Dreamstation. Mr. Burlison has registered with Phillips for the recall.

9.    Plaintiff David Gorris is disabled and resides in Richmond, Virginia. In 2020, he was diagnosed with obstructive sleep apnea and purchased a Dreamstation. He would not have purchased this product if he had known it was defective, contained a carcinogenic byproduct, and would be subject to a recall for containing defective materials. Upon learning of the recall, and after consulting with his physician who wrote him a prescription for a new machine, Mr. Gorris sought to purchase a replacement CPAP, but his medical insurance company would not pay for any part of the replacement machine because it will only pay to replace a CPAP every five years regardless of the reason. Because Mr. Gorris cannot afford to purchase a replacement CPAP machine without financial assistance from insurance, and because he has such severe apnea, Mr. Gorris has continued using the Dreamstation with the addition of an in-line filter recommended by Phillips in its recall. After only two weeks of use, the filter was very dirty, indicating the release of foam particles by his machine. Mr. Basemore is fearful of the damage he may have already suffered to his physical wellbeing and will suffer from his continued use of the defective Dreamstation.  Mr. Gorris has registered with Phillips for the recall.

   **B.    <u>DEFENDANTS</u>**

10.    Koninklijke Philips N.V. is a Dutch multinational company headquartered in Amsterdam, Netherlands, and is the parent company of Philips North America LLC and Philips RS North America LLC.

11.    Defendant Philips North America LLC is a Delaware company with its principal place of business in Cambridge, Massachusetts.

12.    Defendant Philips RS North America LLC (formerly Respironics, Inc.) is a Delaware corporation headquartered in Pittsburgh, Pennsylvania.

13.    References to "Philips," "Defendant," or "Defendants" refer to each and every Defendant individually and collectively.

## II.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which Plaintiffs and some members of the Class are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A).

15.    Venue is proper in this District because Philips North America LLC is headquartered in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III.    FACTUAL ALLEGATIONS

### A. CPAP MACHINES, BIPAP MACHINES, AND VENTILATORS TREAT SERIOUS CONDITIONS.

16.    Sleep apnea is a sleeping disorder in which breathing is disturbed temporarily during sleep. Breathing may stop or become very shallow. This may be associated with fatigue, daytime sleepiness, interrupted sleep, or snoring, among other symptoms. Serious cases can lead to hypertension, heart attack, or stroke, among other medical ailments.

17.    CPAP therapy is a common treatment for sleep apnea. In CPAP therapy, a machine delivers a flow of air through a mask over the nose or mouth, which increases air pressure in the throat so that the airway does not collapse during inhalation. CPAP therapy assists breathing during sleep and can successfully treat sleep apnea.

18.    Other therapies to treat sleep apnea include BiPAP therapy and Automatic Positive Airway Pressure ("APAP"). BiPAP machines provide two different pressure settings, one for

inhalation and one for exhalation.

19.     Patients who use CPAP or BiPAP machines typically use them every day when they sleep. Symptoms may return quickly if therapy is discontinued.

20.     Respiratory failure is a condition in which a patient has difficulty breathing or getting enough oxygen into the blood. Many underlying conditions can cause respiratory failure, including physical trauma, sepsis, pneumonia, COVID-19, and drug abuse. Respiratory failure can be fatal.

21.     Mechanical ventilators, usually called "ventilators," are often used to treat respiratory failure. Ventilators push air into and out of the patient's lungs like a bellows. Ventilators can also be used in other circumstances, such as during surgery when general anesthesia may interrupt normal breathing. The COVID-19 crisis has led to a significant increase in the demand for ventilators in the United States and worldwide.

## B. PHILIPS RECALLED ITS PRODUCTS DUE TO SERIOUS HEALTH HAZARDS FROM THE FOAM THAT IT UTILIZED.

22.     Philips manufactures and sells CPAP machines, BiPAP machines, and ventilators, among other products. According to Philips's 2020 Annual Report, Sleep & Respiratory Care constituted approximately 49% of Philips's total sales in its Connected Care line of business, which in turn accounted for 28% of Philips's overall sales of about €19.535 billion.

23.     Philips's flagship CPAP/BiPAP machine product family is known as the "DreamStation" family line, which includes the original DreamStation, launched in October 2015, and the DreamStation Go (a travel version). Philips sells DreamStation products through its subsidiary Respironics, Inc. that Philips acquired in 2008.

24.    Many of Philips's CPAP and BiPAP machines and ventilators contain PE-PUR foam for sound abatement. Owing to the design of the machines, air passes through this foam before it is pumped into the patient's airway.

25.    On April 13, 2021, Philips announced that it was launching the DreamStation 2, the next-generation machine in its DreamStation product family.

26.    Less than two weeks later, on April 26, 2021, Philips announced the recall and, in the same release, shockingly started pushing consumers to purchase its latest generation device:

> Philips has determined from user reports and testing that there are possible risks to users related to the sound abatement foam used in certain of Philips' sleep and respiratory care devices currently in use. The risks include that the foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone*), and certain environmental conditions involving high humidity and temperature. The majority of the affected devices are in the first-generation DreamStation product family. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected. Philips is in the process of engaging with the relevant regulatory agencies regarding this matter and initiating appropriate actions to mitigate these possible risks. Given the estimated scope of the intended precautionary actions on the installed base, Philips has taken a provision of EUR 250 million.

27.    On June 14, 2021, Philips then issued a further statement:

> To date, Philips has produced millions of Bi-Level PAP, CPAP and mechanical ventilator devices using the PE-PUR sound abatement foam. Despite a low complaint rate (0.03% in 2020), Philips determined based on testing that there are possible risks to users related to this type of foam. The risks include that the PE- PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals. The foam degradation may be exacerbated by use of unapproved cleaning methods, such as ozone,** and high heat and high humidity environments may also contribute to foam degradation.
>
> Therefore, Philips has decided to voluntarily issue a recall notification* to inform patients and customers of potential impacts on patient health and clinical use related to this issue, as well as instructions on actions to be taken.

28.    Philips stated that "[t]he majority of the affected devices within the advised 5-year service life are in the first-generation DreamStation product family." Philips elaborated:

Based on the latest analysis of potential health risks and out of an abundance of caution, the recall notification* advises patients and customers to take the following actions:

For patients using affected BiLevel PAP and CPAP devices: Discontinue use of your device and work with your physician or Durable Medical Equipment (DME) provider to determine the most appropriate options for continued treatment. To continue use of your device due to lack of alternatives, consult with your physician to determine if the benefit of continuing therapy with your device outweighs the risks identified in the recall notification.*

For patients using affected life-sustaining mechanical ventilator devices: Do not stop or alter your prescribed therapy until you have talked to your physician. Philips recognizes that alternate ventilator options for therapy may not exist or may be severely limited for patients who require a ventilator for life-sustaining therapy, or in cases where therapy disruption is unacceptable. In these situations, and at the discretion of the treating clinical team, the benefit of continued usage of these ventilator devices may outweigh the risks identified in the recall notification.*

**Possible health risks**

The company continues to monitor reports of potential safety issues as required by medical device regulations and laws in the markets in which it operates. To date, there have been no reports of death as a result of these issues. Philips has received reports of possible patient impact due to foam degradation. The potential risks of particulate exposure include headache, irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects. The potential risks of chemical exposure due to off-gassing include headache, irritation, hypersensitivity, nausea/vomiting, and possible toxic and carcinogenic effects. Philips has received no reports regarding patient impact related to chemical emissions.

29.     On the same day, Philips provided additional information in an announcement entitled

"Clinical information for physicians," which explained that the foam breakdown "may lead to patient

harm and impact clinical care."

While there have been limited reports of headache, upper airway irritation, cough, chest pressure and sinus infection that may have been associated with the foam, based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from transient potential injuries, symptoms and complications, as well as possibly serious injury which can be life-threatening or cause permanent impairment, or require medical intervention to preclude permanent impairment.

30.    The announcement by Philips detailed two types of hazards from the PE-PUR foam in the devices ("the Foam Defect"). First, the announcement described dangers due to foam degradation exposure:

> **Potential Hazard:** Philips has determined from user reports and lab testing that under certain circumstances the foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user of its Continuous Positive Airway Pressure (CPAP), BiLevel Positive Airway Pressure (BiLevel PAP) and Mechanical Ventilator devices. The foam degradation may be exacerbated by environmental conditions of higher temperatures and humidity in certain regions. Unauthorized cleaning methods such as ozone may accelerate potential degradation.
>
> The absence of visible particles does not mean that foam breakdown has not already begun. Lab analysis of the degraded foam reveals the presence of potentially harmful chemicals including:
>
> -    Toluene Diamine
>
> -    Toluene Diisocyanate
>
> -    Diethylene glycol

31.    The European Union considers Toluene Diisocyanate "highly toxic" and has concluded that Toluene Diamine "cannot be considered safe for use" even as a hair dye.

32.    Philips disclosed that it "has received several complaints regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."

33.    The second hazard is the possibility of VOCs, that is, chemical emissions from the PE-PUR foam. Philips explained:

> **Potential Hazard:** Lab testing performed for and by Philips has also identified the presence of VOCs which may be emitted from the sound abatement foam component of affected device(s). VOCs are emitted as gases from the foam included in the CPAP, BiLevel PAP and MV devices and may have short- and long- term adverse health effects.
>
> Standard testing identified two compounds of concern (COC) may be emitted from the foam that are outside of safety thresholds. The compounds identified are the following:

- Dimethyl Diazine

- Phenol, 2,6-bis (1,1-dimethylethyl)-4-(1-methylpropyl)-

34.     Philips admitted that the risks of these VOCs include that they "may cause irritation and airway inflammation, and this may be particularly important for patients with underlying lung diseases or reduced cardiopulmonary reserve" and may lead to the following symptoms: "headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity, nausea/vomiting, toxic and carcinogenic effects," as well as "adverse effects to other organs such as kidney and liver."

35.     Although Philips did not disclose these health risks until June 2021, Philips has known about these health risks for a long time. For example, customers have complained to Philips about black particles in their machines for several years as evidenced by forum posts and statements from those that follow the industry.

36.     Phillips estimates that 3 to 4 million Recalled Breathing Machines worldwide are subject to the recall, 80% CPAP and BiPAP machines and 20% ventilators, and that 2/3 of all the CPAP and BiPAP machines, 1.6 to 2.1 million, were sold in the United States. On July 22, 2021, the FDA classified the recall of the Recalled Breathing Machines as a Class 1 Recall, the most serious type of recall, saying the use of those devices may cause serious injuries or death.

## C. **PHILIPS HAS NOT REPLACED ANY DEVICES AND HAS NO PLAN TO DO SO.**

37.     Philips's so-called "recall" does not actually provide patients with new CPAP, BiPAP, or ventilator devices, but again suggests consumers can buy the next generation of its product. As Philips's June 14, 2021 announcement makes clear:

**Repair and replacement program**

Philips is providing the relevant regulatory agencies with required information

related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program, Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.

38.     Thus, Philips is not currently replacing the foam in the affected devices and may take a year or more to provide replacement foam.

39.     At the same time, Philips intends to profit from the so-called recall by selling more of its next generation product, the DreamStation 2. Philips intentionally timed the recall to coincide with the launch of the DreamStation 2.

40.     Due to the design of the Recalled Breathing Machines, it is prohibitively difficult for patients to remove or replace the PE-PUR foam themselves. There is also a general shortage of available replacement machines. As a stopgap, Phillips has recommended adding filters in the hose which are supposed to last six weeks. Many Class members have obtained and are using filters, often paying $5 or more each. The filters are getting so dirty with black particles that they often need to be replaced after only one or two weeks, and the filters do nothing about the dangerous gasses.

41.     But patients need to use their machines every day, or else their symptoms—which can be severe and life-altering—may return.

42.     As a result, the recall by Philips leaves patients without safe, free options. Patients may buy Philips's next-generation product or a competitor's product—at full price.

43.     Pursuant to the statements issued by Philips that are set forth above, Philips has

admitted that the Recalled Breathing Machines are defective and unsafe. The Recalled Breathing Machines are effectively worthless and/or have a far lesser value than what customers paid and would not have been purchased by patients if they were informed of the defect at the time of sale.

44.     Plaintiff and the Class members have all suffered economic injuries as a result of the defects in the Recalled Breathing Machines.

### D.    PHILLIPS' MARKETING OF THE RECALLED BREATING MACHINES

45.     Through its website, marketing materials, product brochures, product containers and labels, the User Manuals which accompanied each device and the mere fact that it sold the Recalled Breathing Machines, Phillips made knowing misrepresentations, false affirmations of fact, false promises and false descriptions of the Recalled Breathing Machines to the physicians who prescribed them, to the physician practices and durable medical supply stores and governmental entities which sold or provided them, and to the patients who purchased or received them. These include, but are not limited to: (1) that the Recalled Breathing machines were a safe and effective treatment for Obstructive Sleep Apnea; (2) that they would be free from defects of workmanship and materials and would perform in accordance with the product specifications for period of two (2) years from the date of sale by Phillips to the dealer; and (3) that if they failed to perform in accordance with the product specifications, Phillips would repair or replace the defective material or part. These affirmations of fact and promises and product descriptions were part of the basis of the bargain when Class members purchased or obtained the Recalled Breathing Machines. Phillips also omitted to disclose material facts to the members of the Classes which it had a duty to disclose to them with the purpose of inducing members of the Classes into transactions they would not otherwise have entered into, and which achieved the intended purpose.

## IV.     CLASS ACTION ALLEGATIONS

46.     Plaintiffs bring this class action pursuant to Red. R. Civ. P. 23(a) and (b)(3) on

behalf of the following classes:

**National Class brought by all Plaintiffs.** All persons in the United States who purchased or obtained a Recalled Breathing Machine for personal use.

**Missouri Class Brought by Plaintiff Basemore.** All persons in Missouri who purchased or obtained a Recalled Breathing Machine for personal use.

**Nevada Class Brought by Plaintiff Burlison.** All persons in Missouri who purchased or obtained a Recalled Breathing Machine for personal use.

**Nevada Elder Class Brought by Plaintiff Burlison.** All persons in Missouri 60 years or older who purchased or obtained a Recalled Breathing Machine for personal use.

**Virginia Class Brought by Plaintiff Gorris.** All persons in Virginia who purchased or obtained a Recalled Breathing Machine for personal use.

47.     These Classes will sometimes be referred to herein collectively as "the Class."

The Missouri, Nevada, Nevada Elder and Virginia Classes are sometimes referred to herein as

"the State Classes." Specifically excluded from these definitions are: (1) Defendants, any entity

in which a Defendant has a controlling interest, and its legal representatives, officers, directors,

employees, assigns and successors; (2) the Judge to whom this case is assigned and any member

of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to

amend the Class definitions as necessary.

48.     **Numerosity**. The members of the Classes are so numerous that joinder of all

members is impracticable. While the exact number of Class Members is presently unknown,

the National Class likely consists of more than 2 million people, while each state class likely

consists of at least thousands of people, if not tens of thousands of people. A more precise

number of Class Members can be determined by sales information and other records. Moreover,

joinder of all potential Class Members is not practicable given their numbers and geographic

diversity. Class members are readily identifiable from information and records in the possession

of Defendants and their authorized dealers.

49.    **Typicality**. The claims of Plaintiffs are typical of the claims of the other members of the Class because they arise from the same conduct of Phillips and under the same legal theories. Specifically, Plaintiffs, like all the members of the Classes, purchased or received the defective Recalled Breathing Machines designed, manufactured, marketed, advertised, distributed, and sold by Phillips. Plaintiffs, like all the members of the Classes, have been damaged because their Recalled Breathing Machines did not have the value they would have had if they had not been defective and as represented and warranted.

50.    **Commonality**. At least one question of law or fact is common to the members of each Class. These common questions include, but are not limited to:

a.   Were the Recalled Breathing Machines defective?

b.   Did Phillips make express warranties as to the Recalled Breathing Machines?

c.   Did Phillips breach those express warranties?

d.   Did Phillips breach the implied warranty of merchantability as to the Recalled Breathing Machines?

e.   Did Phillips breach the implied warranty of fitness for a specific purpose as to the Recalled Breathing Machines?

f.   Was Phillips negligent in the design, manufacturing and/or marketing of to the Recalled Breathing Machines?

g.   Was Phillips unjustly enriched by the sale of the Recalled Breathing Machines?

h.   Did Phillips actions constitute unfair and/or deceptive acts or practices under state consumer protection statutes?

i.   What is the appropriate measure of damages and/or restitution that members

of the Classes are entitled to recover from Phillips?

51.    **Adequacy.** Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer product, misrepresentation, and mislabeling class actions, and Plaintiffs intend to prosecute this action vigorously.

52.    **Predominance and Superiority.** Issues of law or fact common to the Class predominate any issues affecting only individual Class members because the defect in the Recalled Breathing Machines is the exact same for all Class Members, the representations made by Phillips regarding the Recalled Breathing Machines were the exact same for all Class Members and the causes of action and the applicable measures of damages arising from such defect and representations is the exact same for all Class Members. Plaintiffs and all Class Members have suffered and will continue to suffer harm and damages as a result of Phillips' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Phillips' misconduct. Absent a class action, Class Members will continue to incur damages, and Phillips' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication. No unusual management issues exist that would preclude the effective maintenance of this case as a class action.

## V.    EQUITABLE TOLLING OF STATUTES OF LIMITATIONS

46.    The running of any statute of limitations has been equitably tolled by reason of

Phillips' fraudulent concealment and/or omissions of critical safety information. Through its affirmative misrepresentations and omissions, Philips actively concealed from Plaintiffs and Class Members and their physicians the defects in, and the risks associated with, the Recalled Breathing Machines.

47.    As a result of Phillips' actions, Plaintiff and the Class members were unaware, and could not have reasonably known or learned through reasonable diligence, that they owned a defective product which had caused them economic damages and that they been exposed to the risks and harms set forth and that those risks and harms were the direct and proximate result of Phillips' acts and omissions.

## VI.    CAUSES OF ACTION

## COUNT ONE (NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)

## BREACH OF EXPRESS WARRANTY

48.    Plaintiffs incorporate herein as if fully set forth here verbatim all the factual allegations set forth above.

49.    Through its website, marketing materials, product brochures, product containers and labels, the User Manuals which accompanied each device and the mere fact that it sold the Recalled Breathing Machines Phillips made affirmations of fact and promises and provided descriptions of the Recalled Breathing Machines to the physicians who prescribed them, to the physician practices and durable medical supply stores and governmental entities which sold or provided them, and to the patients who purchased or received them (Class Members) that the Recalled Breathing machines were a safe and effective treatment for Obstructive Sleep Apnea and other breathing conditions. These affirmations of fact and promises and product descriptions became part of the basis of the bargain when Class members purchased or obtained the Recalled

Breathing Machines.

50.    Phillips has breached these express warranties and thereby proximately caused economic damages to the Class members in the difference between the Recalled Breathing Machines' values if they had complied with these warranties (their purchase prices) and their values as delivered ($0.00).

51.    In addition, in the User Manual for each Recalled Breathing Machine, Phillips offered the following Limited Warranty:

> [Phillips] warrants that the system shall be free from defects of workmanship and materials and will perform in accordance with the product specification for a period of two (2) years from the date of sale by [Phillips] to the dealer. If the product fails to perform in accordance with the product specification, [Phillips] will repair or replace -at its option -the defective material or part.

52.    Given its inclusion in the User Manuals, this Limited Warranty became part of the basis of the bargain when Class members purchased or obtained the Recalled Breathing Machines. The Recalled Breathing Machines were all defective in workmanship and/or materials and failed to perform in accordance with the product specifications, breaching the Limited Warranty. Because Phillips cannot in a timely manner, if ever, repair or replace the defective PE-PUR sound abatement foam in the Recalled Breathing Machines, the remedy provided by the Limited Warranty, repair or replacement, fails of its essential purpose. Accordingly, Plaintiffs and Class members are entitled to recover their economic damages proximately caused by Phillips' breach of the Limited Warranty -- the difference between the Recalled Breathing Machines' values if they had complied with the Limited Warranty (their purchase prices) and their values as delivered ($0.00).

53.    Plaintiffs and the Class were not required to give pre-suit notice to Phillips because Phillips did not directly sell the Recalled Breathing Machines to them, Phillips concealed the Foam

Defect and because others have previously given notice to Phillips on behalf of the Class members. To the extent Plaintiffs and the Class would normally have been required to give notice of the breach of warranty to Phillips before bringing suit, they were excused from doing so because Phillips had actual knowledge that each Class Member's Recalled Breathing Machine was in breach of warranty. The attempt by Phillips in the Limited Warranty to disclaim all other express warranties is void as a matter of law under every state's version of UCC 2-316(1). Likewise, the attempt to in the Limited Warranty to shorten its duration from the applicable limitations period to two years from the date of sale to the dealer is not effective under every state's version of UCC 2-725(1) because it was not part of the "original agreement," but rather contained in the User Manual received after the sale. That limitation is also unconscionable under the states' laws.

## COUNT TWO (NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

54.    Plaintiffs incorporate herein as if fully set forth here verbatim all the factual allegations set forth above.

55.    As a matter of law, because Phillips is a seller of and merchant of goods of the type of the Recalled Breathing Machines, it warranted that the Recalled Breathing Machines would (a) pass without objection in the trade under the contract description, and (b) be fit for the ordinary purposes for which such goods are used. Because the Recalled Breathing Machines contain the Foam Defect which makes their use unsafe and poses a threat of serious injury and death, they do not pass without objection in the trade under the contract description, because all parts of the trade would object to them on that basis. For the same reason, they are not fit for the purposes for the ordinary purposes for which they are used, the safe and effective treatment of Obstructive Sleep Apnea and other breathing problems.

56.    Accordingly, the Recalled Breathing Machines breach the implied warranty of merchantability. Plaintiffs and Class members are thus entitled to recover their economic damages proximately caused by Phillips' breach of the implied warranty -- the difference between the Recalled Breathing Machine's values if they had complied with the warranty (their purchase prices) and their values as delivered ($0.00).

57.    Plaintiffs and the Class were not required to give pre-suit notice to Phillips because Phillips did not directly sell the Recalled Breathing Machines to them, Phillips concealed the Foam Defect and because others have previously given notice to Phillips on behalf of the Class members. To the extent Plaintiffs and the Class would normally have been required to give notice of the breach of warranty to Phillips before bringing suit, they were excused from doing so because Phillips had actual knowledge that each Class Member's Recalled Breathing Machine was in breach of warranty. The attempt in the Limited Warranty to limit the duration of all implied warranties to the same purported two year period (from sale to the dealer) of the Limited Warranty is unenforceable pursuant to 15 U.S.C. § 2308(b) & (c) and 16 C.F.R. § 703.1(h) because the two year period of the Limited Warranty is itself unenforceable and the limitation is not set forth in clear and unmistakable language prominently displayed on the face of the Limited Warranty, and under UCC 2-725(1) because it was not part of the "original agreement," but rather contained in the User Manual received after the sale.

## COUNT THREE (NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)

## BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

58.    Plaintiffs incorporate herein as if fully set forth here verbatim all the factual allegations set forth above.

59.    Phillips is a seller of and merchant of goods of the type of the Recalled Breathing Machines.

60.    The Recalled Breathing Machines are FDA approved for specific purposes—the safe and effective treatment of specific medical conditions--and, therefore, prescribed by physicians for those purposes and Phillips markets the machines to physicians and consumers for the safe and effective treatment of those specific medical conditions.  Because of this, Phillips knew that, at the time of purchase, their ultimate consumers, Class Members, had a specific purpose for buying the Recalled Breathing Machines-- the safe and effective treatment of specific medical conditions—and that they were relying on Phillips to provide equipment suitable for such purposes. For example, in the User manual of the DreamStation CPAP machines, Phillips recognized that the Intended Use of the machines is to "deliver positive airway pressure therapy for the treatment of Obstructive Sleep Apnea," a very specific purpose.

61.    Phillips breached the implied warranty of fitness for a specific purpose because the Recalled Breathing Machines are not fit for their purpose of safely and effectively treating specific medical conditions given that they contain the Foam Defect which makes their use unsafe and poses a threat of serious injury and death. Plaintiffs and Class members are thus entitled to recover their economic damages proximately caused by Phillips' breach of the implied warranty -- the difference between the Breathing Machines values if they had complied with the warranty (their purchase prices) and their values as delivered ($0.00).

62.    Plaintiffs and the Class were not required to give pre-suit notice to Phillips because Phillips did not directly sell the Recalled Breathing Machines to them, Phillips concealed the Foam Defect and because others have previously given notice to Phillips on behalf of the Class members. To the extent Plaintiffs and the Class would normally have been required to give notice of the

breach of warranty to Phillips before bringing suit, they were excused from doing so because Phillips had actual knowledge that each Class Member's Recalled Breathing Machine was in breach of warranty. The attempt in the Limited Warranty to limit the duration of all implied warranties to the same purported two year period (from sale to the dealer) of the Limited Warranty is unenforceable pursuant to 15 U.S.C. § 2308(b) & (c) and 16 C.F.R. § 703.1(h) because the two year period of the Limited Warranty is itself unenforceable and the limitation is not set forth in clear and unmistakable language prominently displayed on the face of the Limited Warranty, and under UCC 2-725(1) because it was not part of the "original agreement," but rather contained in the User Manual received after the sale.

### COUNT FOUR (NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)

### VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT 15 U.S.C. 2301, *ET SEQ.* (ASSERTED ON BEHALF OF THE NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)

63.    Plaintiffs incorporate herein as if fully set forth here verbatim all the factual allegations set forth above.

64.    The Recalled Breathing Machines constitute "consumer products" as defined in 15 U.S.C. § 2301.

65.    Plaintiffs and the members of the Class are "consumers" as defined in 15 U.S.C. § 2301.

66.    Phillips is a "supplier" of the Recalled Breathing Machines as defined in 15 U.S.C. § 2301.

67.    Phillips is a "warrantor[s]" as defined in 15 U.S.C. § 2301.

68.    The warranties made by Phillips pertained to consumer products costing the

consumer more than five dollars, *see* 15 U.S.C. § 2302(e).

69.    Plaintiffs and the members of the Class invoke federal jurisdiction for the claims stated under this Count pursuant to the Class Action Fairness Act.

70.    The Recalled Breathing Machines were defective at the time they came off Phillips' assembly lines and at all subsequent times (including at the times of sale and/or delivery to Plaintiffs and the members of the Classes) because the Foam Defect makes them dangerously unsafe.

71.    As a result, the Recalled Breathing Machines were worth less (nothing) at the time of their sales than the prices paid for them.

72.    Plaintiffs and the members of the Classes would not have purchased or accepted the Recalled Breathing Machines had they known of the Foam Defect.

73.    Phillips violated the Magnuson-Moss Federal Warranty Act by failing to comply with the express warranties they made to Plaintiffs and the members of the Class as set forth in the First Cause of Action.  *See*, 15 U.S.C. § 2301, *et seq*. Phillips violated the Magnuson-Moss Federal Warranty Act by failing to comply with the implied warranties they made to Plaintiffs and the members of the Class as set forth in the Second and Third Causes of Action.  *See*, 15 U.S.C. § 2301, *et seq*.

74.    Plaintiffs and the other members of the Classes need not have given notice of the Foam Defect to Phillips and an opportunity for Phillips to comply with their warranty obligations prior to the filing of this suit, because Plaintiffs may give such notice to Phillips on their own behalf and on behalf of the Class after class certification pursuant to 15 U.S.C. § 2310(e).

75.    Based on the facts alleged herein, any durational limitations to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count are

procedurally and substantively unconscionable and otherwise unenforcable under federal law and the applicable state common law.

76.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count are tolled under equitable doctrines.

77.    Plaintiffs and the members of the Class sustained injuries and damages as a proximate result of Phillips' violation of its express and implied warranties, and are entitled to legal and equitable relief against Defendants, including economic damages, rescission or other relief as appropriate, including compensatory damages consisting of: (a) the difference between the values of the Recalled Breathing Machines as warranted (their prices) and their actual values at the time of purchase ($0.00), or (b) the cost to replace the Recalled Breathing Machines, and (c) other miscellaneous incidental and consequential damages.

78.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other members of the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by them in connection with the commencement and prosecution of this action.

## COUNT FIVE (NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)

## STRICT LIABILITY—FAILURE TO WARN

79.    Plaintiffs incorporate herein as if fully set forth here verbatim all the factual allegations set forth above.

80.    Defendants had a duty to warn Plaintiffs and Class members regarding the Foam Defect contained within the Recalled Breathing Machines and failed to do so when they became cognizant of the Foam Defect alleged herein.

81.    Specifically, Defendants failed to provide the necessary warnings regarding the

dangers of inhaling the dangerous particles and gasses emitted by the Recalled Breathing Machines as a result of the Foam Defect.

82.     Defendants intentionally concealed their knowledge of this danger – even though they had a duty to make it known that this danger existed.

83.     Plaintiffs and the Class members suffered economic harm as a direct and proximate result of the Defendants' conduct. In addition, Plaintiffs and the Class have a significantly increased risk of suffering lung damage and cancer compared to what they would have had absent their use of the Recalled Breathing Machines. Further, to a reasonable degree of medical certainty, medical monitoring is necessary to diagnose properly the warning signs of lung damage and cancer. Plaintiffs and the Class are thus entitled to recover the costs of such medical monitoring.

## COUNT SIX (NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)

## NEGLIGENCE—FAILURE TO WARN

84.     Plaintiffs incorporate herein as if fully set forth here verbatim all the factual allegations set forth above.

85.     Defendants had a duty to warn the Plaintiff and Class members regarding the Defect contained within the Recalled Breathing Machines and negligently failed to do so when they (the Defendants) became cognizant of the Foam Defect alleged herein.

86.     Specifically, Defendants failed to provide the necessary warnings regarding the dangers of inhaling the dangerous particles and gasses emitted by the Foam Defect in the Recalled Breathing Machines.

87.     Defendants negligently concealed their knowledge of this danger – even though they had a duty to make it known that this danger existed.

88.     As a result, Plaintiffs and the Class members suffered economic harm as a direct and proximate result of the Defendants' conduct. In addition, Plaintiffs and the Class have a significantly increased risk of suffering lung damage and cancer compared to what they would

have had absent their use of the Recalled Breathing Machines. Further, to a reasonable degree of medical certainty, medical monitoring is necessary to diagnose properly the warning signs of lung damage and cancer. Plaintiffs and the Class are thus entitled to recover the costs of such medical monitoring.

**COUNT SEVEN (NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)**

**STRICT LIABILITY—DEFECTIVE DESIGN**

89.    Plaintiffs incorporate herein as if fully set forth here verbatim all the factual allegations set forth above.

90.    Defendants negligently designed the Recalled Breathing Machines. Philips owed Plaintiffs and the Class members a duty to design the Recalled Breathing Machines in a reasonable manner. The design of the Recalled Breathing Machines, including, but not limited to the choice of and/or design of the foam and the placement of the foam within the Recalled Breathing Machines, was defective and unreasonably dangerous, causing degradation and inhalation of the foam, and causing headaches, irritation, inflammation, respiratory issues, and exposure to materials.

91.    The Recalled Breathing Machines' Foam Defect alleged herein rendered the products not reasonably fit, suitable, or safe for their common and intended purpose.

92.    The dangers of the Recalled Breathing Machines' Defect outweigh the benefits the products can provide and renders them unreasonably dangerous.

93.    Safer, alternative designs which do not result in the inhalation of the toxic foam exist – as other machines similar to the Recalled Breathing Machines do not contain the Foam Defect alleged herein because they are designed in a safer manner.

94.    The risk/benefit analysis of the Recalled Breathing Machines is unreasonable, and the Recalled Breathing Machines should have had better warnings about the risks that they pose due to the Foam Defect, or they should not have been sold at all.

95.    The Recalled Breathing Machines did not perform in their common and

ordinary manner – which is to help the end-users breathe without being exposed to the risks posed by the Foam Defect.

96.     As a result, the Plaintiffs and Class members suffered economic harm directly and proximately related to Defendants' conduct. In addition, Plaintiffs and the Class have a significantly increased risk of suffering lung damage and cancer compared to what they would have had absent their use of the Recalled Breathing Machines. Further, to a reasonable degree of medical certainty, medical monitoring is necessary to diagnose properly the warning signs of lung damage and cancer. Plaintiffs and the Class are thus entitled to recover the costs of such medical monitoring.

## COUNT EIGHT (NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)

## STRICT LIABILITY—DEFECTIVE DESIGN

97.     Plaintiffs repeat and reallege all previous paragraphs as if fully included and alleged herein.

98.     Defendants negligently designed the Recalled Breathing Machines. Philips owed Plaintiffs and the Class members a duty to design the Recalled Breathing Machines in a reasonable manner. The design of the Recalled Breathing Machines, including, but not limited to, choice of and/or design of the foam and the placement of the foam within the Recalled Breathing Machines was defective and unreasonably dangerous, causing degradation and inhalation of the foam, and causing headaches, irritation, inflammation, respiratory issues, and exposure to materials.

99.     The Recalled Breathing Machines' Foam Defect alleged herein rendered the products not reasonably fit, suitable, or safe for their common and intended purpose.

100.    The dangers of the Recalled Breathing Machines' Defect outweigh the benefits the products can provide and renders them unreasonably dangerous.

101.    Safer, alternative designs which do not result in the inhalation of the toxic foam exist – as other machines similar to the Recalled Breathing Machines do not contain the Foam

Defect alleged herein because they are designed in a safer manner.

102.     The risk/benefit analysis of the Recalled Breathing Machines is unreasonable, and the Recalled Breathing Machines should have had better warnings about the risks that they pose due to the Foam Defect, or they should not have been sold at all.

103.     The Recalled Breathing Machines did not perform in their common and ordinary manner – which is to help the end-users breathe without being exposed to the risks posed by the Foam Defect.

104.     As a result, the Plaintiff and Class members suffered economic harm directly and proximately related to Defendants' conduct. In addition, Plaintiffs and the Class have a significantly increased risk of suffering lung damage and cancer compared to what they would have had absent their use of the Recalled Breathing Machines. Further, to a reasonable degree of medical certainty, medical monitoring is necessary to diagnose properly the warning signs of lung damage and cancer. Plaintiffs and the Class are thus entitled to recover the costs of such medical monitoring.

## COUNT NINE (THE MISSOURI CLASS)

## MISSOURI MERCHANDISING PRACTICES ACT ("MMPA")

105.     Plaintiff Basemore incorporates herein as if fully set forth here verbatim all the factual allegations set forth above.

106.     Phillips' conduct described herein constitutes the act, use or employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression and omission of material facts in connection with the sale and advertisement of merchandise, the Recalled Breathing Machines, in trade or commerce in Missouri, making it unlawful under Mo. Rev. Stat. § 407.020.

107.     Plaintiff Basemore and the Missouri Class members purchased the Recalled Breathing Machines for personal purposes and suffered ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by Mo. Rev.

Stat. § 407.020. Plaintiff Basemore and the Missouri Class members acted as reasonable consumers would have acted under the circumstances and Phillips' conduct declared unlawful by Mo. Rev. Stat. § 407.020 would cause reasonable persons to enter into the transactions (purchasing the Recalled Breathing Machines) that resulted in the damages.

108.    Accordingly, pursuant to Mo. Rev. Stat. § 407.025, Plaintiff Basemore and the Missouri Class members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Recalled Breathing Machines as represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to replace the Recalled Breathing Machines, and (c) other miscellaneous incidental and consequential damages. In addition, given the nature of Phillips conduct, the Court should exercise its discretion to award Plaintiff Basemore and the Missouri Class Members punitive damages, attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Phillips' unlawful conduct.

## COUNT TEN (THE NEVADA CLASS AND THE NEVADA ELDER CLASS)

## NEVADA DECEPTIVE TRADE PRACTICES ACT ("NDTPA")

109.    Plaintiff Burlison incorporates herein as if fully set forth here verbatim all the factual allegations set forth above.

110.    Phillips' conduct in the course of its business described herein constitutes deceptive trade practices as set forth in Nev. Rev. Stat. § 598.0915, because Phillips: (a) knowingly made false representations as to the characteristics, ingredients, uses and benefits of the Recalled Breathing Machines by falsely representing they are a safe and effective treatment for Obstructive Sleep Apnea and other breathing conditions; (b) represented that the Recalled Breathing Machines were of a particular standard, quality or grade by falsely representing they

are a safe and effective treatment for Obstructive Sleep Apnea and other breathing conditions; and (c) knowingly made other false representations in the transactions that resulted in Plaintiff Burlison's and the Nevada Class member's ownership and use of the Recalled Breathing Machines.

111.    Phillips also engaged in deceptive trade practices in the course of its business under Nev. Rev. Stat. § 598.0923 by knowingly failing to disclose a material fact, the existence of the Foam Defect, in connection with the sales of the Recalled Breathing Machines. Phillips also engaged in deceptive trade practices in the course of its business under Nev. Rev. Stat. § 598.0925 by making an assertion of scientific, clinical or quantifiable fact, that the Recalled Breathing Machines are a safe and effective treatment for Obstructive Sleep Apnea and other breathing conditions, in advertisements that would cause reasonable persons to believe the assertion was true when it did not have in its possession factually objective scientific, clinical or quantifiable evidence substantiating the assertion.

112.    Pursuant to Nev. Rev. Stat. § 41.600, Plaintiff Burlison and the Nevada Class are entitled to recover for these deceptive trade practices the damages they have sustained: (a) the difference between the values of the Recalled Breathing Machines as represented (their prices) and their actual values at the time of purchase ($0.00), or (b) the cost to replace the Recalled Breathing Machines, and (c) other miscellaneous incidental and consequential damages. In addition, they are entitled to recover any equitable relief the Court deems appropriate and their costs in the action and reasonable attorneys' fees.

113.    Pursuant to Nev. Rev. Stat. § 598.0977, Plaintiff Burlison and the Nevada Elder Class are entitled to recover the damages they suffered as a results of Phillips' deceptive trade practices: (a) the difference between the values of the Recalled Breathing Machines as

represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to replace the Recalled Breathing Machines, and (c) other miscellaneous incidental and consequential damages. In addition, they are entitled to recover punitive damages, if appropriate, and reasonable attorneys' fees.

## COUNT ELEVEN (THE VIRGINIA CLASS)

## VIRGINIA CONSUMER PROTECTION ACT ("VCPA")

114.    Plaintiff Gorris incorporates herein as if fully set forth here verbatim all the factual allegations set forth above.

115.    Phillips committed the following acts declared unlawful and prohibited by Va. Code Ann. § 59.1-200: (a) misrepresenting the qualities, characteristics, ingredients, uses and benefits of the Recalled Breathing Machines by falsely representing they are a safe and effective treatment for Obstructive Sleep Apnea and other breathing conditions; (b) misrepresenting that the Recalled Breathing Machines were of a particular standard, quality or grade by falsely representing they are a safe and effective treatment for Obstructive Sleep Apnea and other breathing conditions; and (c) using other deception, false promise or misrepresentation in connection with the transactions that resulted in Plaintiff Gorris's and the Virginia Class members' ownership and use of the Recalled Breathing Machines.

116.    Because they suffered loss as a result of Phillips' violations of the VCPA, Plaintiff Gorris and the Virginia Class members may each recover actual damages or $500, whichever is greater, pursuant to Va. Code Ann. § 59.1-204. Because Phillips' violations were willful, the jury may increase the damages to an amount not exceeding three times the actual damages or $1,000, whichever is greater. The actual damages are: (a) the difference between the values of the Recalled Breathing Machines as represented (their prices) and their actual values at the time of

purchase ($0.00), or (b) the cost to replace the Recalled Breathing Machines, and (c) other miscellaneous incidental and consequential damages. In addition, Plaintiff Gorris and the Virginia Class members are entitled to recover reasonable attorneys' fees and court costs. The Court may award additional relief pursuant to Va. Code Ann. § 59.1-205.

## COUNT TWELVE (NATIONAL CLASS OR, ALTERNATIVELY, THE STATE CLASSES)

## UNJUST ENRICHMENT (IN THE ALTERNATIVE)

117.    Plaintiffs incorporate herein as if fully set forth here verbatim all the factual allegations set forth above.

118.    Plaintiffs and the Class members conferred a tangible and material economic benefit upon Phillips by purchasing the Recalled Breathing Machines. Plaintiff and Class members would not have purchased, chosen and/or paid for the Recalled Breathing Machines had they known the true risks of using them. Phillips is not providing a timely repair or replacement for the Recalled Breathing Machines. Under these circumstances, it would be unjust and inequitable for Phillips to retain the economic benefits it received at the expense of Plaintiffs and the Class.

119.    Failing to require Phillips to provide remuneration under these circumstances would result in Phillips being unjustly enriched at the expense of Plaintiffs and the Class members who endure being exposed to the risk of developing serious medical conditions and can no longer use their Recalled Breathing Machines safely.

120.    Phillips' retention of the benefits conferred upon them by Plaintiffs and the Class would be unjust and inequitable. Plaintiffs and the Class are entitled to recovery of those benefits.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request, individually and on behalf of the Class, that this Court:

A.  determine that the claims alleged herein may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Nationwide Class and the State Classes as defined above, designate Plaintiffs as the representatives of those Classes, and appoint Plaintiffs' counsel as Class Counsel;

B.  award equitable and injunctive relief, including, but not limited to, requiring Phillips to institute a medical monitoring program for Plaintiffs and Class members, restitution, and disgorgement of profits;

C.  award all actual damages, general or special, incidental, consequential and punitive to which Plaintiffs and Class members are justly entitled;

D.  award pre-judgment and post-judgment interest at the maximum rates allowable in or in equity;

E.  award costs and reasonable attorneys' fees; and

F.  award all such other relief, legal or equitable, to which Plaintiffs and the Class are justly entitled.

## **JURY DEMAND**

Plaintiffs and the Class demand a trial by jury on all issues so triable.

Dated: July 27, 2021                    Respectfully Submitted,

**BLOCK & LEVITON LLP**

*/s/ Jason M. Leviton*
Jason M. Leviton, Esq.
jason@blockleviton.com
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600

and

Roger L. Mandel, Esq., Tex. Bar No. 12891750
(will apply for admission pro hac vice)
Primary Email: rmandel@jeevesmandellawgroup.com
Secondary Email: khill@jeeveslawgroup.com
**JEEVES MANDEL LAW GROUP, P.C.**
2833 Crockett Street, Suite 135
Fort Worth, TX 75251
Telephone: (214) 253-8300

and

Scott R. Jeeves, Esq., FBN 0905630
(will apply for admission pro hac vice)
Primary Email:sjeeves@jeeveslawgroup.com
Secondary Emails: khill@jeeveslawgroup.com
                lawclerk@jeeveslawgroup.com
**THE JEEVES LAW GROUP, P.A**.
954 First Avenue North
St. Petersburg, FL 33705
Telephone: (727) 894-2929

and

Craig E. Rothburd, Esq., FBN 49182
(will apply for admission pro hac vice)
Email: crothburd@e-rlaw.com
**CRAIG E. ROTHBURD, P.A.**
320 W. Kennedy Blvd., Suite 700
Tampa, FL 33606
Telephone: (813) 251-8800